UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | No.     14 CR 135 |
| v. ) | |
| ) | Hon. Virginia Kendall |
| JOHN BILLS ) | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION
FOR A CHANGE OF VENUE**

The UNITED STATES OF AMERICA, by its attorney, ZACHARY T. FARDON, United States Attorney for the Northern District of Illinois, respectfully replies to defendant JOHN BILLS's motion for a change of venue as follows:

Defendant claims that he "cannot receive a fair trial in this town" and that coverage in the Chicago news media about the allegations in his case has been "pervasive, relentless and fierce." Because of the news coverage and because of the general public distrust of red light cameras, a program on which defendant worked and for which he is alleged to have taken bribes, defendant asks that the case be moved to a different venue, and he suggests Nevada. The government disagrees that news coverage of this matter or public distrust of red light cameras create a presumption of prejudice to defendant's right to a fair trial, and it asks that defendant's motion be denied.

As the defendant acknowledges, the United States Constitution provides: "The Trial of all Crimes . . . shall be by Jury, and such Trial shall be held in the State where the said Crimes shall have been committed; . . ." U.S. Const., Article III, § 2, para. 3. Further, Federal Rule of Criminal Procedure 18 states:

> Except as otherwise permitted by statute or by these rules, the prosecution shall be had in a district in which the offense was committed. The court shall fix the place of the trial within the district with due regard to the convenience of the defendant and the witnesses and the prompt administration of justice.

The exception to this rule that is provided by Federal Rule of Criminal Procedure 21(a) states that venue of a trial should be transferred to another district "if the court is satisfied that so great a prejudice against the defendant exists in the transferring district that the defendant cannot obtain a fair and impartial trial there." Fed.R.Crim.P.21(a). Whether to grant a motion for change of venue is left to the sound discretion of the trial court.

In *United States v. Skilling,* the Supreme Court reiterated its rejection of "'the proposition that juror exposure to . . . news accounts of the crime . . . alone presumptively deprives the defendant of due process.'" 561 U.S. 368, 380 (2010), (quoting *Murphy v. Florida*, 421 U.S. 794, 798–799 (1975)). This is in accord with the Court's earlier pronouncement that "[t]he mere fact of "pretrial publicity — even pervasive, adverse publicity — does not inevitably

lead to an unfair trial." *Nebraska Press Association v. Stuart*, 427 U.S. 539, 554 (1976). *See also Irvin v. Dowd*, 366 U.S. 717, 722 (1961) (Jurors are not required to be "totally ignorant of the facts and issues involved"; "scarcely any of those best qualified to serve as jurors will not have formed some impression or opinion as to the merits of the case."); *Reynolds v. United States*, 98 U.S. 145, 155–156 (1879) ("[E]very case of public interest is almost, as a matter of necessity, brought to the attention of all the intelligent people in the vicinity, and scarcely any one can be found among those best fitted for jurors who has not read or heard of it, and who has not some impression or some opinion in respect to its merits.").

Emphasizing that "[p]rominence does not necessarily produce *prejudice*, and juror *impartiality* . . . does not require ignorance," *Skilling,* 561 U.S. at 381 (emphasis in original), the *Skilling* Court made clear that "[a] presumption of prejudice . . . attends only the extreme case." *Id.* The Seventh Circuit has stated that "[p]resumed prejudice . . . occurs in cases surrounded by a 'carnival atmosphere,' where 'pervasive and inflammatory pretrial publicity' makes juror bias inevitable." *United States v. Nettles*, 476 F.3d 508, 513 (7th Cir. 2007) (quoting *United States v. Peters*, 791 F.2d 1270, 1296 (7th Cir.1986) (superseded on other grounds, as stated in *United States v. Guerrero*, 894 F.2d 261, 267 (7th Cir.1990)). The present case can hardly be

3

cast in such terms. Defendant has collected many articles regarding the investigation and prosecution of this matter, some that have to do only with the red light camera program in Chicago, and some that simply reported on developments in the investigation and prosecution of allegations that defendant had accepted bribes. Articles that are arguably negative, however, do not amount to "extreme." *See Skilling*, 561 U.S. at 382 ("although news stories about [defendant] were not kind, they contained no confession or other blatantly prejudicial information of the type readers or viewers could not reasonably be expected to shut from sight.").

Defendant goes further and argues that even factual news articles reporting on defendant's connection to Michael Madigan add to the need for a change of venue, as he claims that Madigan is a "career politician who is arguably the most disliked public figure in the state." Def. Mot. at 7. If such a claim were to merit a change of venue, then individuals with connections to local public figures who do not have favorable poll ratings would nearly always be saved from facing trial in the communities where they allegedly committed their crimes.

Defendant also claims that the press coverage in this case "has continued with no sign of abating." *Id.* Yet, aside from news coverage of events taking place in court, the publicity in this matter has appeared to

4

abate quite a bit and is no more (and quite a bit less) prevalent than in similar high profile cases, such as the criminal cases of former governors George Ryan and Rod Blagojevich, and cannot reasonably viewed as extreme. *See United States v. Philpot*, 733 F.3d 734, 741 (7th Cir. 2013) (no grounds for concluding that the judge abused his discretion in denying the motion when pretrial publicity was no more inflammatory than other local political corruption cases that had been successfully tried in the district).

In the absence of extreme circumstances, a presumption of prejudice to the right to a fair trial cannot be drawn, and courts then determine, through the voir dire process of jury selection, whether actual prejudice exists. "In reviewing denials of requests to change venue, we have stated that the ultimate question is whether it is possible to select a fair and impartial jury, and in most situations the voir dire examination adequately supplies the facts upon which to base that determination." *United States v. Nettles*, 476 F.3d at 513 (7th Cir. 2007) (quotations and citations omitted). As stated by the Fourth Circuit:

> Only in extreme circumstances may prejudice to a defendant's right to a fair trial be presumed from the existence of pretrial publicity itself. . . . Ordinarily, the trial court must conduct a voir dire of prospective jurors to determine if actual prejudice exists. If voir dire reveals that an impartial jury cannot be impaneled, the trial court should then grant the motion.

5

*United States v. Higgs*, 353 F.3d 281, 307-08 (4th Cir. 2003) (emphasis added, quotations and citations omitted); *see also United States v. Yousef*, 327 F.3d 56, 155 (2d Cir. 2003) ("the key to determining the appropriateness of a change of venue is a searching voir dire of the members of the jury pool").

The defense argues that because so many municipalities in the Northern District use the cameras, the whole jury pool will have an opinion on the red light cameras. Given the large size of the potential jury pool in this District, and the Court's ability to voir dire the jury pool on these particular issues, this argument lacks credibility. *See United States v. Philpot*, 733 F.3d at 741 (7th Cir. 2013) (600,000 potential jurors exist in Lake and Porter counties in Indiana which was more than sufficient).

Defendant devotes a good deal of his argument to the claim that because public support for red light cameras is extremely low, there is a risk that jurors will judge defendant simply on his association with these cameras. Defendant goes on to discuss the low regard in which the public and the press hold the red light camera program, and he basically alleges that he cannot be fairly tried in any community that has red light cameras or that is located near other communities with red light cameras. He even crosses off communities with speed cameras, which are only very minimally involved in this case, as well any judicial district in states where drivers dislike drivers

6

from Illinois.    He then lands upon the District of Nevada as his suggestion for the venue in this matter.

The opinion of potential jurors regarding red light cameras can be easily examined during voir dire.   More importantly, the Court can question potential jurors as to whether their view of red light cameras would prevent them from judging this matter fairly.   Only if all of the potential jurors called for service in this matter are so blinded by their feelings about red light cameras that they feel unable to follow the Court's instructions to judge the evidence fairly would there be a basis on which to discuss a change of venue in this matter.   Given all the facts in this case, that seems incredibly unlikely and certainly not borne out on the current record.

Accordingly, in the present case, given that pretrial publicity has been neither extraordinary nor of the type that readers or viewers could not be expected to shut from sight, no presumption of prejudice can be drawn, and a careful voir dire of potential jurors will safeguard defendant's right to a fair trial.   If, in the unlikely event that the voir dire reveals that an impartial jury cannot be impaneled, actual prejudice would be established, and there would be clear grounds on which to grant a change of venue.   *United States v. Peters*, 791 F.2d at 1296 (7th Cir. 1986) (superseded on other grounds, as stated in United States v. Guerrero, 894 F.2d 261, 267 (7th Cir.1990)) ("A

court in its discretion may defer a determination of a pretrial venue motion until after the voir dire of the prospective jurors when the effects of pretrial publicity can be fully assessed.").

        Respectfully submitted,

        ZACHARY T. FARDON
        United States Attorney


By:  *s/ Carrie Hamilton*
        CARRIE HAMILTON
        LAURIE BARSELLA
        Assistant United States Attorneys
        United States Attorney's Office
        219 South Dearborn Street
        Chicago, Illinois 60604
        (312) 353-4558