8-20-2015

FILED

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

AUG 2 0 2015

JUDGE VIRGINIA M. KENDALL
U.S DISTRICT COURT

UNITED STATES OF AMERICA

v.

KAREN FINLEY

No. 14 CR 135-3

Judge Virginia M. Kendall

### PLEA AGREEMENT

1.  This Plea Agreement between the United States Attorney for the Northern District of Illinois, ZACHARY T. FARDON, and defendant KAREN FINLEY, and her attorneys, MICHAEL KIMERER and MICHAEL MONICO, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure and is governed in part by Rule 11(c)(1)(C) and Rule 11(c)(1)(A), as more fully set forth below. The parties to this Agreement have agreed upon the following:

### Charges in This Case

2.  The indictment in this case charges defendant with nine counts of mail fraud, in violation of Title 18, United States Code, Sections 1341 and 1346 (Counts 1-9); three counts of wire fraud, in violation of Title 18, United States Code, Sections 1343 and 1346 (Counts 10-13); three counts of federal program bribery, in violation of Title 18, United States Code, 666(a)(2) (Counts 18-20) and one count of conspiracy, in violation of Title 18, United States Code, Section 371, to commit federal program bribery, prohibited by Title 18, United States Code, Section 666(a)(2) (Count 14).

3.     Defendant has read the charges against her contained in the indictment, and those charges have been fully explained to her by her attorney.

4.     Defendant fully understands the nature and elements of the crimes with which she has been charged.

### Charge to Which Defendant Is Pleading Guilty

5.     By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to Count Fourteen of the indictment, which charges defendant with conspiracy, in violation of Title 18, United States Code, Section 371, to commit federal program bribery, prohibited by Title 18, United States Code, Section 666(a)(2), in relation to the payment of bribes in exchange for City of Chicago contracts.

### Factual Basis

6.     Defendant will plead guilty because she is in fact guilty of the charge contained in the indictment.  In pleading guilty, defendant admits the following facts and that those facts establish her guilt beyond a reasonable doubt:

Beginning in at least January 2003 and continuing through on or about June 30, 2011, in the Northern District of Illinois, Eastern Division, and elsewhere, defendant Finley, did conspire with Individuals A and B, John Bills, Martin O'Malley and others to corruptly give, offer, and agree to give things of value, namely cash payments and other personal financial benefits for the benefit of Bills and O'Malley, with intent to influence and reward Bills, an agent of the City of

2

Chicago, a local government that received in excess of $10,000 in federal funding during each of the twelve-month calendar years from 2003 through 2011, in connection with any business, transaction, and series of transactions of $5,000 or more of the City of Chicago, namely contracts for the Digital Automated Red Light Enforcement Program.

Specifically, in early 2003, Karen Finley was the Vice President of Operations at Redflex Traffic Systems, Inc., at a time when Redflex was competing with another company for a red light camera contract with the City of Chicago. In the course of the competition, Finley learned that John Bills, who was the City official in charge of Chicago's red light camera program, was assisting and championing Redflex by providing pointers and inside information to Redflex. In approximately late May 2003, Redflex was awarded Chicago's contract. In return for Bills' assistance to Redflex, and in an effort to ensure that Bills would continue to provide such assistance, Finley agreed with Individual B that Redflex would hire Martin O'Malley as an independent contractor. Finley understood that O'Malley was a friend of Bills and that it was important to Bills that Redflex hire O'Malley. Finley interviewed O'Malley before Redflex offered him a position, but at the time she interviewed him, Finley understood that Redflex would in fact hire O'Malley in exchange for Bills' help in getting Redflex the Chicago contract and in order to ensure Bills' assistance to Redflex in the future.

3

In the fall of 2003, Finley and Individual B finalized O'Malley's contract with Redflex, which included provisions for lucrative increases in O'Malley's compensation as new red light cameras were added. The addition of such provisions were out of the ordinary, as the customer liaison position for which O'Malley was hired normally did not include such commissions and O'Malley was not going to be selling cameras to the City of Chicago, In December 2003, Finley, at Individual B's direction and on behalf of Redflex, signed O'Malley's contract.

In 2007, after Finley became the Chief Executive Officer of Redflex, O'Malley's commission payments escalated. Redflex employees began to question O'Malley's commissions and suggested revisiting or renegotiating O'Malley's commission structure. Finley avoided discussions regarding revisiting or renegotiating O'Malley's commissions in order to keep Bills happy and to ensure that Bills would assist Redflex in the awarding of new red light camera contracts. At that time, Bills was assisting Redflex by working to have the new contracts sole-sourced to Redflex. One of the contracts was, in fact, sole-sourced to Redflex. Although the second contract was not sole-sourced, Bills, through O'Malley, gave Individual A and Finley the opportunity to draft documents that Bills could use to give Redflex an advantage in winning that contract. In an e-mail exchange, Finley admonished Individual A that Individual A's discussions with O'Malley about these drafts should not be in writing and advised that Finley was deleting her e-mails regarding the drafts as she was sending them.

4

Finley knew that Redflex was paying certain personal expenses for Bills in order to influence Bills to assist Redflex in keeping and expanding Redflex's business with the City of Chicago. Both Individual A and O'Malley paid for such benefits for Bills, including meals, golf outings, hotel stays, rental cars, and other such benefits, expensed the payments to Redflex, and received reimbursement from Redflex. On some occasions, it was Finley who approved the expense reports and authorized the reimbursements. For example, in December 2003, Finley approved reimbursement for airline tickets to Phoenix, plus car rental, meals, and golf that O'Malley purchased for himself, Bills, and a friend of Bills over a five-day period in Phoenix. Also, on various occasions during 2004, Finley approved reimbursement for meals that O'Malley purchased for himself and Bills. Further, Finley approved reimbursements for expenses incurred by Individual A on behalf of Bills, including stays at the Biltmore Hotel, rental car expenses, and meals and entertainment.

Despite Finley's knowledge of and participation in the foregoing, Finley falsely certified on Economic Disclosure Statements in both August 2007 and September 2008, in connection with the application process for contract PO 16396 and as part of the contract process for contract PO 18031, respectively, that no agents of Redflex, during the prior five years, had bribed or attempted to bribe an employee of the City of Chicago.

Shortly after Redflex was awarded the first Chicago red light camera contract, Individual B told Finley that, at some point, Redflex would have to give

5

Bills a job. Finley understood that Redflex would give Bills a job in return for the assistance that Bills had given Redflex in being awarded the contract. In 2011, when Bills was planning to retire, Finley and other Redflex executives discussed the need to find a job for Bills, which ultimately led to Redflex helping Bills get a job with Nonprofit Corporation A.

In addition to taking actions to provide personal financial benefits to O'Malley and Bills, with intent to influence and reward Bills in connection with Chicago's red light camera contracts, Finley willfully avoided learning whether O'Malley was passing any of his Redflex compensation to Bills. At various times throughout the course of O'Malley's contract, Finley suspected that O'Malley was passing money to Bills, but she willfully avoided learning the truth. Finley did ask Individual A if O'Malley was paying Bills; however, Individual A gave Finley conflicting and unsatisfactory responses. Finley did not ask any further questions of Individual A nor took any actions to determine if her suspicious were founded. Despite her suspicions, Finley never approached Bills or O'Malley to find out the truth about whether O'Malley was paying Bills in exchange for his help on the Chicago contracts. In 2006, Redflex's comptroller encouraged Finley to reassess or renegotiate the commission provisions in O'Malley's contract, and Finley refused to do so. Finley believed that doing so would have made Bills unhappy and jeopardized Redflex's current and future contracts with Chicago. In 2007, O'Malley was seeking payment of a bonus he said he was due. Individual A told Finley that

6

O'Malley's bonus should not be paid until Individual A talked to Bills about it. Finley complied and did not ask Individual A any questions, including why he needed to check with Bills about O'Malley's bonus. In October 2010, a former Redflex employee alleged that O'Malley was paying Bills, which resulted in an internal investigation at Redflex. At no time in response to the allegation did Finley question O'Malley or Bills about this allegation. In the aftermath of the investigation of the allegations, which concluded that there had only been a one-time payment of a hotel room for Bills, which Finley knew to be untrue, Finley still did not approach O'Malley or Bills. Further, when the Chairman of the Board of Directors of Redflex's parent company noted to Finley that O'Malley's salary was quite high, Finley responded by defending O'Malley's salary, despite her suspicions that O'Malley was passing money to Bills.

Finley acknowledges that in each calendar year from 2003 through 2011, the City of Chicago received more than $10,000 in federal funding in the form of various federal grants.

The foregoing facts are set forth solely to assist the Court in determining whether a factual basis exists for defendant's plea of guilty, and are not intended to be a complete or comprehensive statement of all the facts within defendant's personal knowledge regarding the charged crime and related conduct.

## Maximum Statutory Penalties

7.     Defendant understands that the charge to which she is pleading guilty carries the following statutory penalties:

    a.     A maximum sentence of 5 years' imprisonment.  This offense also carries a maximum fine of $250,000, or twice the gross gain or gross loss resulting from that offense, whichever is greater.  Defendant further understands that the judge also may impose a term of supervised release of not more than three years.  Defendant further understands that the Court must order restitution to the victims of the offense in an amount determined by the Court.

    b.     In accord with Title 18, United States Code, Section 3013, defendant will be assessed $100 on the charge to which she has pled guilty, in addition to any other penalty or restitution imposed.

## Sentencing Guidelines Calculations

8.     Defendant understands that in imposing sentence the Court will be guided by the United States Sentencing Guidelines.  Defendant understands that the Sentencing Guidelines are advisory, not mandatory, but that the Court must consider the Guidelines in determining a reasonable sentence.

9.     For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

    a.     **Applicable Guidelines**. The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing.  The following

8

statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2014 Guidelines Manual.

      b.    **Offense Level Calculations.**

      i.    Pursuant to USSG §2C1.1(a)(1), the base offense level is 12.

      ii.    Pursuant to USSG §2C1.1(b)(1), because the offense involved more than one bribe, the offense level is increased by 2 levels.

      iii.    Pursuant to USSG §2C1.1(b)(2), because the value to be obtained exceeded $5000, the offense level is increased by the number of levels from the table in §2B1.1.

      iv.    Pursuant to USSG §2B1.1(b)(1)(I), a 16 level increase is warranted because the value of the property obtained was more than $1,000,000 but less than $2,500,000.

      v.    Pursuant to USSG §2C1.1(b)(3), a four level increase is warranted because the offense involved a public official in a high- level decision-making or sensitive position.

      vi.    Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for her criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for her actions within the meaning of

Guideline § 3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to her ability to satisfy any fine or restitution that may be imposed in this case, a two-level reduction in the offense level is appropriate.

       vii.    In accord with Guideline § 3E1.1(b), defendant has timely notified the government of her intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline § 3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

       c.    **Criminal History Category**. With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government, defendant's criminal history points equal zero and defendant's criminal history category is I.

       d.    **Anticipated Advisory Sentencing Guidelines Range**. Therefore, based on the facts now known to the government, the anticipated offense level is 31, which, when combined with the anticipated criminal history category of I, results in an anticipated advisory sentencing guidelines range of 108 to 135 months' imprisonment, in addition to any supervised release, fine, and restitution the Court may impose. However, pursuant to 5G1.1(a), because the statutory

maximum sentence on the Count to which defendant will plead guilty is 5 years' imprisonment, which is less than the minimum of the applicable guideline range, 5 years shall be guideline sentence.

      e.    Defendant and her attorney and the government acknowledge that the above guidelines calculations are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely. Defendant understands that further review of the facts or applicable legal principles may lead the government to conclude that different or additional guidelines provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw her plea on the basis of the Court's rejection of these calculations.

      10.    Both parties expressly acknowledge that this Agreement is not governed by Fed. R. Crim. P. 11(c)(1)(B), and that errors in applying or interpreting any of the sentencing guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the guidelines. The validity of this

Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw her plea, nor the government the right to vacate this Agreement, on the basis of such corrections.

### Cooperation

11.     Defendant agrees she will fully and truthfully cooperate in any matter in which she is called upon to cooperate by a representative of the United States Attorney's Office for the Northern District of Illinois. This cooperation shall include providing complete and truthful information in any investigation and pre-trial preparation and complete and truthful testimony in any criminal, civil, or administrative proceeding. Defendant agrees to the postponement of her sentencing until after the conclusion of her cooperation.

### Agreements Relating to Sentencing

12.     Each party is free to recommend whatever sentence it deems appropriate.

13.     This Agreement will be governed, in part, by Fed. R. Crim. P. 11(c)(1)(C). That is, the parties have agreed that any sentence of imprisonment and supervised release imposed in this matter will run concurrently with any sentence of imprisonment and supervised release imposed in the matter of *United States v. Karen Finley*, case number 2:15 CR 148, now pending in the Southern District of Ohio. The parties further have agreed that, if the sentencing in case number 2:15 CR 148, now pending in the Southern District of Ohio, takes place prior to the

12

sentencing in this matter, a downward departure, pursuant to Guideline § 4A1.3(b)(1), to Criminal History Category I is warranted. The parties agree that adding points for the sentence imposed in case number 2:15 CR 148 would substantially over-represent the seriousness of defendant's criminal history, as case number 2:15 CR 148 involves unrelated but similar conduct that occurred during a similar time frame as the conduct in this matter and that could have been joined with this matter for contemporaneous resolution, which would have resulted in no additional criminal history points. Other than the agreed concurrent sentences and the agreed downward departure to Criminal History Category 1, the parties have agreed that the Court remains free to impose the sentence it deems appropriate. If the Court accepts and imposes the agreed concurrent sentence and the departure to Criminal History Category I, defendant may not withdraw this plea as a matter of right under Fed. R. Crim. P. 11(d) and (e). If, however, the Court refuses to impose the agreed concurrent sentence and the departure to Criminal History Category I, thereby rejecting this Agreement, or otherwise refuses to accept defendant's plea of guilty, either part has the right to withdraw from this Agreement.

14.　It is understood by the parties that the sentencing judge is neither a party to nor bound by this Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw her guilty plea.

15.    Regarding restitution, defendant acknowledges that pursuant to Title 18, United States Code, Section 3663A, the Court must order defendant, together with any jointly liable co-defendants, to make full restitution in an amount to be determined by the Court at sentencing, which amount shall reflect credit for any funds repaid prior to sentencing.

16.    Restitution shall be due immediately, and paid pursuant to a schedule to be set by the Court at sentencing.

17.    Defendant acknowledges that pursuant to Title 18, United States Code, Section 3664(k), she is required to notify the Court and the United States Attorney's Office of any material change in economic circumstances that might affect her ability to pay restitution.

18.    Defendant agrees to pay the special assessment of $100 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

19.    Defendant agrees that the United States may enforce collection of any fine or restitution imposed in this case pursuant to Title 18, United States Code, Sections 3572, 3613, and 3664(m), notwithstanding any payment schedule set by the Court.

20.    After sentence has been imposed on the count to which defendant pleads guilty as agreed herein, the government will move to dismiss the remaining

14

counts of the indictment as to defendant and the forfeiture allegation as to defendant.

## Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Agreement

21.  This Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 14 CR 135.

22.  This Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Agreement.

### Waiver of Rights

23.  Defendant understands that by pleading guilty she surrenders certain rights, including the following:

a.  **Trial rights**. Defendant has the right to persist in a plea of not guilty to the charge against her, and if she does, she would have the right to a public and speedy trial.

15

      i.      The trial could be either a jury trial or a trial by the judge sitting without a jury. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

      ii.     If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and her attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

      iii.    If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict her unless, after hearing all the evidence, it was persuaded of her guilt beyond a reasonable doubt. The jury would have to agree unanimously before it could return a verdict of guilty or not guilty.

      iv.    If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

      v.     At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant.

Defendant would be able to confront those government witnesses and her attorney would be able to cross-examine them.

      vi.    At a trial, defendant could present witnesses and other evidence in her own behalf. If the witnesses for defendant would not appear voluntarily, she could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

      vii.    At a trial, defendant would have a privilege against self-incrimination so that she could decline to testify, and no inference of guilt could be drawn from her refusal to testify. If defendant desired to do so, she could testify in her own behalf.

      b.    **Waiver of appellate and collateral rights**. Defendant further understands she is waiving all appellate issues that might have been available if she had exercised her right to trial. Defendant is aware that Title 28, United States Code, Section 1291, and Title 18, United States Code, Section 3742, afford a defendant the right to appeal her conviction and the sentence imposed. Acknowledging this, defendant knowingly waives the right to appeal her conviction, any pre-trial rulings by the Court, and any part of the sentence (or the manner in which that sentence was determined), including any term of imprisonment and fine within the maximums provided by law, and including any order of restitution, in exchange for the concessions made by the United States in this Agreement. In addition, defendant also waives her right to challenge her conviction and sentence,

17

and the manner in which the sentence was determined, in any collateral attack or future challenge, including but not limited to a motion brought under Title 28, United States Code, Section 2255. The waiver in this paragraph does not apply to a claim of involuntariness or ineffective assistance of counsel, nor does it prohibit defendant from seeking a reduction of sentence based directly on a change in the law that is applicable to defendant and that, prior to the filing of defendant's request for relief, has been expressly made retroactive by an Act of Congress, the Supreme Court, or the United States Sentencing Commission.

24.    Defendant understands that by pleading guilty she is waiving all the rights set forth in the prior paragraphs. Defendant's attorney has explained those rights to her, and the consequences of her waiver of those rights.

### Presentence Investigation Report/Post-Sentence Supervision

25.    Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope, and extent of defendant's conduct regarding the charge against her, and related matters. The government will make known all matters in aggravation and mitigation relevant to sentencing, including the nature and extent of defendant's cooperation.

26.    Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to

and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of her financial circumstances, including her recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 and enhancement of her sentence for obstruction of justice under Guideline § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

27.   For the purpose of monitoring defendant's compliance with her obligations to pay a fine and restitution during any term of supervised release or probation to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release or probation to which defendant is sentenced. Defendant also agrees that a certified copy of this Agreement shall be sufficient evidence of defendant=s request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

## Other Terms

28.     Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine and restitution for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

## Conclusion

29.     Defendant understands that this Agreement will be filed with the Court, will become a matter of public record, and may be disclosed to any person.

30.     Defendant understands that her compliance with each part of this Agreement extends throughout the period of her sentence, and failure to abide by any term of the Agreement is a violation of the Agreement.  Defendant further understands that in the event she violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph,

20

notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

31.    Should the judge refuse to accept defendant's plea of guilty, this Agreement shall become null and void and neither party will be bound to it.

32.    Defendant and her attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

33.    Defendant acknowledges that she has read this Agreement and carefully reviewed each provision with her attorney. Defendant further acknowledges that she understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE:     8/20/2015

_____
ZACHARY T. FARDON
United States Attorney

_____
KAREN FINLEY
Defendant

_____
LAURIE J. BARSELLA
Assistant U.S. Attorney

_____
MICHAEL KIMERER
Attorney for Defendant

_____
MICHAEL MONICO
Attorney for Defendant

21